Thank you, Your Honor. My name is Palmer Huvestal. I'm from Helena, Montana, and as I indicated, I'm appearing on behalf of Gordon Mann in this matter. The issue that arises in my case is relatively simple in my view, and that is simply whether there is federal criminal jurisdiction for an Indian who is a member of a tribe that's not federally recognized. The authority for that case is the Lapeer v. McCormick case, which of course we relied heavily upon. That's the only issue, and as the court stated in Lapeer v. McCormick, there's a threshold question, and that threshold question is exactly that. Is the defendant a member, or does he claim membership or affiliation with a federally recognized tribe? And if he does not, then the inquiry ends, and then they go and explain the reasons why the inquiry ends, and it's because of the special relationship that the tribe has with the government. If your argument is correct, does that mean that conduct of this type is beyond the reach of law enforcement? Absolutely not. I think that the tribe has the ability to prosecute the state in certain circumstances. The tribe has misdemeanor jurisdiction only, correct? Correct. Does the state have jurisdiction? According to, I think it's Bruce, yes. There's an indication, or there's a summary of federal criminal jurisdiction in tribes, and the state in some circumstances does. Does it depend on whether they're under Section 240 or whatever, and what contact they have with the federal government and the state in terms of state jurisdiction on tribal lands? But I think what's important is in this case, it was pled alternatively. That is, he was pled in Count 1 as an Indian, and it was pled in Count 2 as a non-Indian. And the jury had the ability to determine first whether he's an Indian, and if they determined that he was not, then they had the ability to determine under Count 2. Count 2 is charged under 1152? Yes. So if it's reversed, he can go back, and they can charge him if they want under the section of being a non-Indian? I don't think so. I think Double Jeopardy would... You think Double Jeopardy? Bar that. Both those questions, both counts went to the jury? On a reversal? Yes. Okay. I think Double Jeopardy would bar Count 2 because he was acquitted. I think on both counts... Was he acquitted on Count 2, or did they not reach... That was my question. Did they not reach that verdict because it's an alternative verdict? He'd have to be an Indian or not an Indian. My recollection is that the verdict form is blank on Question 3. So in any event, I think that... Because we don't have to resolve the Double Jeopardy possibility. Not today. In any event, I don't think that it places this sort of conduct beyond the reach of law enforcement. I think that clearly one or another jurisdiction could charge. The government, the federal government, could have charged differently as well. So I think that what it brings us to is this threshold question that was set forth in Lapeer v. McCormick. And I don't think we ever reached the analysis set forth in Bruce. However, even if we do, the record is clear that Mr. Mann was... He claimed no affiliation with any other tribe. The government tries to circumvent in their briefing the Lapeer analysis by saying, well, the Bruce factors apply and this is what the jury determined. But if we look at the record, and I can go and read portions of the record, beginning with Mr. Carroll's opening statement, he claims that Mr. Mann is a member of the Little Shell tribe. The witnesses, he asks, for example, what affiliation does he have with, and they say Little Shell. The FBI agent identifies him as being a member of the Little Shell tribe. At no point in the government's case in chief or in the defendant's case in chief was there any evidence whatsoever that he claimed affiliation with the Blackfeet Indian tribe. The Little Shell is a band, isn't it? Well, I think it's called... Yes, it is a band, but I think that its formal name is the Little Shell tribe. Was that the same one that was involved in Lapeer? Yes, yes. And the history is set forth in the Koch case and the DeLorme case, and there was some testimony in the record as well. Under 1153, the defendant must be an Indian. That's correct. As defined by federal law. That's correct. Under 1152, the defendant cannot be an Indian, correct? That's correct. And under 1153, it's the government's burden beyond a reasonable doubt to prove that the defendant's an Indian? That he's an Indian person. And under 1152, the claim that the defendant would make that I'm not an Indian is an affirmative defense by preponderance. That's correct. And interestingly enough, I think that under 1152, the defendant, when proving that affirmative defense, can bring in anthropological evidence. He can bring in cultural evidence. He can bring in ethno-historical evidence. Whereas under 1153, if he's not a member of a federally recognized tribe, school's out. Right. Assuming that there's no double jeopardy problem to him being retried under 1152, is Mr. Mann judicially estopped from denying that he is a non-Indian? He can't come forward in 1152 now and raise as an affirmative defense that he is an Indian. Well, again, I think that under Bruce and under Cruz, he clearly is an Indian in an anthropological, ethno-historical and cultural sense. The only sense that seems to matter is political. Right. That's the heart of your argument now. So you make the argument now. You don't get to come back later on and say, well, he's actually an Indian. We just fooled the court. It wouldn't relieve the government of its burden in a prosecution. Right. I think I do, Your Honor. I think under Bruce, I could bring forth those factors that are set forth. Even though you've already told the district court once that he is not an Indian, and you get to come forward under an 1152 prosecution and tell the court that he is an Indian? I told the court that he was not a member of a federally recognized tribe of Indians. Isn't that sufficient? Doesn't that make him a non-Indian? You're telling me there's a third category between Indian and non-Indian? Yes. And what is that? That is he, and I think it's set forth or it's identified in the record. I would have thought that if you were an Indian or a non-Indian, that that would encompass the whole universe. But you're telling me now there's a third category, and that would be of what? He's like Jack Crabb in Little Big Men. He is kind of an Indian. He's kind of not an Indian. I don't mean to be facetious, but that's really what he is. So you're suggesting he couldn't be prosecuted under either 1152 or 1153? Sounds to me like he's reserving the defense if necessary. That's exactly right. Would that be correct? Yes, Your Honor. I mean, your client didn't write this patchwork of law and regulation and what's an Indian and what's not an Indian? That's correct. Your position in front of the district court was that for the purposes of 1153, he's not a member of a federally recognized tribe. That's exactly right. Period, full stop, end of story. That's exactly right. Okay. And I will yield to my defense. Okay. Mr. Donovan. Good morning and may it please the Court. I'm Dan Donovan from Great Falls, Montana. I represent Shane Magi. Our issue is somewhat related to Mr. Mann's, but it's a pretty straightforward argument that the government did not prove, beyond a reasonable doubt, that my client is an Indian person. Without proving that element, there is no jurisdiction over him for any of the four offenses alleged. He's not an enrolled member of the Blackfeet tribe, correct? That's correct. His mother is. In fact, he's not an enrolled member of any tribe. That's correct. But he has Indian blood, correct? He has Indian blood. He has three-sixty-fourths Indian blood. Of a tribe that is. Overall, he has 1.5% of Blackfeet tribe. Blackfeet. Which gives me an argument on the first prong from the Bruce and Cruz test, that is that they have to prove there's a sufficient degree of Indian blood. And the argument quite there is quite simply that three-sixty-fourths is not sufficient. And the cases that are cited in the Bruce case and the Cruz case, all that I read, in order for there to be a finding of an Indian person, there had to be at least one-eighth or eight-sixty-fourths Indian blood. Let me stop on that, because first you start with the jury instruction, which I don't think was objected to, that said on the first prong you had to have some degree. And now you're saying, well, some degree means something different than some. Well, the Bruce case talks about some, and the Cruz case uses the word sufficient. Well, I guess if you go back in time to where those came from, the cases that they're derived from, they always use the term some. And then they say, well, you know, was that sufficient to meet the Indian blood prong? And I guess I'm having some trouble, from a legal standpoint, figuring out where sufficient came in and how it's defined, in your view. All I know is it came in in the Cruz case, so I suppose you could consider that dictum. But I'm really not sure, without reading all the cases prior to the Cruz. The difficulty is we have a couple of cases, and they say, well, in this case you have an Indian blood of X percent, or one over 64, whatever. But we don't have a case that says that the amount that your client has is too little, do we? No, we don't. So we would be striking out on our own in that regard. My other argument on that point is the use of the word degree. The word degree suggests that the percentage is important. And I would argue that someone with a higher percentage of Indian blood, there's less emphasis on the second prong of the Bruce Cruz test, and perhaps somebody like my client who has a lower degree of Indian blood. So you think it's kind of a sliding scale, some kind of balancing test, in other words? Well, to make an argument on my client's behalf, Mr. Magi, I would say somebody with such a low quantum, and they use the word degree, not quantum. I think quantum would suggest some blood. Degree suggests to me that the percentage of the blood is somehow important. But for Mr. Magi, who has such a low degree of blood, that the second prong becomes more important and the factors become, seems to me, more important. Could you address that? Because let's just, for talking purposes, say that he meets prong number one of some degree. But then the jury instruction asks the jury to make a determination on, you know, the overall recognition of whether he is an Indian, but with this descending order of things. Right. So if you would address that factor and the government's burden on that. Okay. Well, the first factor is tribal enrollment. And, of course, Mr. Magi has nothing there. He cannot be a member, correct? That's correct. He's not a member of the tribe. Legally ineligible. The second factor is government recognition through receipt of assistance provided only to Indians. And the only thing they have Mr. Magi on there is that he has received medical treatment at the Indian Health Service Hospital, the Blackfeet Hospital. Yet, and that's the one difference he has with Mr. Cruz, except like Mr. Cruz, there's no additional evidence of any other benefits. Is it clear that he was only entitled to that medical treatment if he was an Indian? So he was perhaps admitted by mistake or through oversight or something? Well, because we use the word Indian here, I would say he's entitled to that benefit because he's a descendant of an Indian, not an Indian. And who's determining the rules here? Is it the Blackfeet that are determining the rule or is this under some Indian Health Service? I honestly don't know. I didn't try the case. I assume that it's Indian Health Service rule, but I don't know. It may be Indian Health Service applying Blackfeet law. Does the Indian Health Service have a rule about descendant status? I don't know about that. And I don't know if the Indian Health Service has a statute of regulation that says a descendant is treated as an Indian for their purposes. Your client was prosecuted under 18 U.S.C. 1153, correct? Correct. And that's what we've been talking about here, and 18 U.S.C. 113A3, right? Correct. Does that similarly require that the defendant be an Indian as we've discussed? Yes. Okay. How about 18 U.S.C. 924, the discharging brandishing a weapon during a crime of violence? Does that require that the defendant be an Indian as we've discussed here? It doesn't within the statute, and I didn't brief or argue this, but I would contend that if the government doesn't have jurisdiction over the underlying assault offense, which they wouldn't if they didn't prove Indian status, that there's no jurisdiction here for the 924 C offense. Okay. So it's your position that the 924 discharging brandishing during a crime of violence requires, just as 1153 does, that the defendant be an Indian as we've discussed here? Yes. Well, perhaps not in the elements of the 924 charge, but the crime of violence alleged here includes Indian status, and if they can't prove Indian status, they haven't proven the crime of violence, and therefore they can't prove the use of the gun. The 924 charge stands on its own, doesn't it? That's a charge independent of the 1153 charge. I haven't briefed that, but my argument would be that it doesn't stand on its own. It's connected, and there's no jurisdiction over that. So you're saying you can't charge 924 unless you charge it in tandem with something else? My argument would be, yeah, you can't charge that in this sort of situation where the jurisdiction depends. You know, it's a crime on an Indian reservation. Jurisdiction depends on Indian status. What if the U.S. attorney had charged you only with a 924? What motion would you have made? Well, I'd make a motion to dismiss and grounds the lack of jurisdiction. The United States criminal jurisdiction doesn't extend to Indian country? In certain cases it does. For example, drug cases. First-degree murder? Pardon? First-degree murder? First-degree murder would extend under 1153 under the Major Crimes Act. How about felon in possession of a firearm? Could the United States charge that under the same geographical defendant identity circumstances? Well, they can and they do as far as I know. That felon in possession extends no matter where it's committed. But you think 924 doesn't? That would be my argument, yes. Okay. But it didn't come up until now, really. Okay. The third question is enjoyment of benefits of tribal affiliation. And, again, Mr. Magi benefited from going to the hospital. But the other considerations of being eligible for a hunting and fishing license or for scholarship benefits or whatever, there's no evidence that he got either of those benefits. But he was eligible for such benefits? He was eligible. As Cruz was also eligible. By getting the hunting and fishing license or being eligible for scholarships, is he eligible for those things on an equal basis with all other enrolled members of the tribe? That I don't know. My impression from reading these cases is that anybody who is on the reservation, non-Indian and Indian, can apply for a hunting or fishing license. I assume that for someone to be entitled to some sort of scholarship, they would have to be either a member of the tribe or descendant of a member of the tribe. My question is, does descendant status give you the same eligibility for the same scholarships to the same degree as being a member does? Maybe you're only entitled to 50% scholarship or something if you've got descendant status. I don't know the answer to that, and that wasn't part of it. You know, it makes a big difference here because it's a question of whether the descendant status pushes you into the Indian category because you're potentially eligible or because you actually have taken advantage of it and, therefore, the tribe treats you more as an Indian. You could live in New York, for example, and be a descendant of the Blackfoot tribe, for example. So what is your position on what descendant status does in terms of Indian status? I'm hoping I understand your question correctly, but I take the position from Cruz, where the decision Cruz said, well, even though Cruz was eligible for these benefits because she apparently didn't apply for them or receive them, that doesn't matter. That doesn't contribute to evidence that she was an Indian person. So that would leave him with just the one visit to the Indian Health Service? Right. Right. And the social recognition, I think, really boils down to their evidence that he was prosecuted in the Blackfeet tribal court. But as in Cruz, I make the argument that under the Blackfeet tribal code, the tribal court actually has no jurisdiction over non-tribal members. They have to be a member of the Blackfeet tribe or a member of some tribe. And, of course, Mr. Madras. Does the tribal court assert jurisdiction over descendant members? The tribal court? Yes. I think they've asserted jurisdiction. Their prosecutor stated that, but apparently it hasn't been challenged. And to my knowledge, the defendants in tribal court aren't entitled to trained, experienced legal counsel. They have advocates and such in that argument. Your contention is even though he was tried in tribal court, that the jurisdiction was probably flawed? That's what I would argue. And this is outside the record, but if you look at a pre-sentence report, there's no record of any tribal court convictions whatsoever. He just had some state court convictions. With that, I'd like to reserve the room. What was the evidence at the trial? The tribal court prosecutor came in and testified that he has been, Mr. Madras has been prosecuted in tribal court. They didn't say when, for what, where, what happened, anything like that. Just that evidence alone, which made it somewhat similar to the evidence they presented in Cruz. Okay. Thank you. We'll hear from the United States at this time. Thank you. May it please the Court. Curt Almey for the United States. I first wanted to correct two standards of review citation errors in the United States brief relative to Mr. Magi. First of all, on page 10, regarding Indian person, the government argued in its brief that this review was subject to plain air review, and that is the denial of the motion for acquittal. It actually is subject to sufficiency of the evidence review. The defendant in this case did not put on additional evidence. So under USV Rushdan, we should be subject to sufficiency of the evidence review. Also, in reviewing the substantive reasonableness of the case, or of the sentence, excuse me, we argued that the review was plain air because the defendant had not objected at sentencing. The Ottery cases since came out and made clear that the defendant does not have to object to preserve that question. So the proper review standard is abuse of discretion. When we look at both of these cases, there's no question that both defendants committed criminal conduct and serious criminal conduct. The question completely resolves around the jurisdictional status of the court. And in both of these cases, when we look at the Cruz test and the Mann test, the evidence is stronger than is argued in counsel's brief, that in both cases, both of these individuals are Indian persons. And I'd like to start first with the Magi case. For the first time now, in his reply brief, Mr. Magi argues that there's insufficient blood quantum. That is the first prong of the Bruce test. This case, that issue was not raised at trial, and it was not raised in his opening brief. Therefore, it's waived under Bazaway v. Ins. 79 F. 3rd. 118. Even if this court does take a look at that issue, at the substance of it, there is sufficient evidence here of that prong. First of all, as the court pointed out, the standard is not a significant degree of blood. In Bruce and Cruz, that standard was articulated as some blood or sufficient blood. Also, as the court noted, in the Bruce case, those cases don't stand for the proposition that you have to have one-eighth blood in order to have a sufficient quantum. They just simply were examples where one-eighth was sufficient. Have you got any cases in which the court has exercised jurisdiction at less than one-eighth? I do not, Your Honor, but it makes sense that the court should. Again, the question is... The court should what? The court should allow jurisdiction to be exercised in this case. How far does the government get to go with this? Your Honor, I think that... One-two hundred and fifty-six? Your Honor, as you wrote in the Bruce case, when we take a look at, for instance, U.S. v. Rogers, what the Supreme Court was going at at U.S. v. Rogers was a situation where the Cherokee Indians were basically pulling a fast one over the government. There was an act that entitled individual members or tribal members to benefits, so the Cherokee adopted a white man. And the Supreme Court said, no, no, you can't do that. There has to be some integrity in the process. And I think that's what we're looking for by saying some blood. And in this case, we have that integrity. Not only do we have a person who's three-sixty-fourths and some of it is Blackfeet blood, but also his mother is an enrolled member of the Blackfeet tribe. This isn't a case where I was adopted. She got grandmothered in, right? Yeah, she got grandmothered in, right. So you're saying, in effect, that some Indian blood is just like a threshold ticket to whether you could prosecute under the statute. You still would need the second prong. Oh, certainly. What is your response to counsel's argument that we're on some kind of a balancing or sliding scale, the more the blood, the less you need prong two, the less the blood, the more you need prong two? Your Honor, I would suggest that that's a question best left to the jury. We've stated that this is a test that needs to be decided by the jury, and I think we ought to leave that to the discretion of those people. I don't think that we should put an additional requirement. We already have a sliding scale requirement on the second prong, and I would suggest that the standard is clear and clear enough for a jury to exercise. Gordon Mann was prosecuted under both 1153 and 1152, correct? That's correct. And do you agree with opposing counsel's statement that the 1152 verdict did not go to the jury? That's correct. The government did not charge Shane Maggie, Maggie, under 1152, did it? No, it did not. Do you know why? Well, Your Honor, that is outside the record, but I've spoken to the prosecutor and he didn't think that Indian person was going to be an issue in that case. The Cruz case came out after Maggie did, and the question, and obviously in Maggie the prosecutor didn't solicit whether or not benefits were actually received. He focused on whether he was eligible for benefits, thought the evidence would be sufficient. So he didn't charge 1152. I'm sorry, did I interrupt? Go ahead. That's all, I'm sorry. And do you agree that 924 stands alone? Your Honor, the problem with the 924C conviction is you have to have an underlying predicate offense of a crime of violence over which the court has jurisdiction. And in this case we alleged that it's predicated on Count 1, which was the 1153 charge. So although we did not have to plead and prove Count 1, we chose to do so. And because we did so, the jury, in order to find him guilty of 924C, had to find the elements of the underlying violent crime charge, one of which is Indian person. Over which you would have to have jurisdiction. That's correct. So going back though, you suggested that with Mr. Maggie's case somehow, Prong 2 is stronger than counsel would make it out. But it seems to me that even if we accept your argument that the sum blood has been satisfied, their argument is even so, this is about as weak as you could get in terms of a cultural or anthropological connection with the tribe. And so I'm interested in your view on that. I realize the jury found what it found, but is that enough? And we believe that evidence is sufficient. And if you go through the four factors, the first factor is enrolled in a federally acknowledged tribe. Off the table. Well, it's off the table to literally meet the test. But this is the same issue that came up in Cruz. We argue this in Cruz, that having descended member status still provides you some recognition. Now, the court in Cruz said that we'd waived that argument. We have not waived it here. We preserved it. And we argue that there is evidence. In fact, it's undisputed that he has descended member status. Let me just go back. It says tribal enrollment. That's what the jury was asked to find. In descending order, that's number one. Was he enrolled in the tribe? Well, if you go and look at the supplemental excerpt of records seven through nine, he was recognized on a descendant form at the Blackfeet Enrollment Department. So he had some tribal recognition of his status with the Blackfeet tribe, not as an enrolled member, but as a descendant member. And he couldn't even be an enrolled member, right? That's correct. So the tribe says, you can't be a member of our tribe, but we know you are a descendant of a member of our tribe. So they gave him descended member status. That's not the same thing as being a member of a tribe. It's not. So he kind of fails or doesn't meet number one. You're somehow wanting to say that, well, he's a descendant, so that somehow makes him semi-enrolled. That's right. Your Honor, on this factor, because we have this status that isn't contemplated by the factor, we'd argue that the factor is partially met, just like all four factors can be met to some degree. The jury instructions, you're the ones that gave the jury instructions to the court between the two of you. I mean, if that was the government's argument, it's not in the jury instructions. It was not. So now go on to the other factors and tell us what evidence there is. On the second factor, whether or not the government received assistance reserved only to Indians, it's undisputed that he was given health benefits at the Indian Health Services in Browning. Regarding the third factor. Let me stop there. Did anybody try and verify his Indian status? Yes, they did. Who did? At Indian Health Services. Right. I do not recall anything in the record that suggested that. Does that mean that perhaps somebody at Indian Health Services made a mistake? Well, the testimony from Indian Health Services. Why would he be stopped by actions of the government in admitting him for benefits? The testimony at trial was he was entitled to those free services because he had some quantum of Blackfeet blood and he was a descended member of the tribe. Okay. So we're back to descendant status. That's right. Descendant status, does the Blackfeet place any limitations on who can be considered a descendant? I'm unaware of that. Status in perpetuity? So it just keeps going from generation to generation? I'm unaware of anything in the record, but certainly the record suggested that being the direct first level descendant of an enrolled member is sufficient. The whole descendant thing strikes me as sort of temporary status at the country club where you're not really a member but you get privileges anyway or being required to pay union dues to cover political costs without being a member of the union. It certainly doesn't grant full membership rights, but it does grant some rights and we've talked about those. And those aren't insignificant rights, free medical care at IHS. Where tribal status, the critical part of tribal status for us is a political affiliation, then what does part-time status or being descended from a Democrat mean for getting you as Democratic status? Well, it entitles you, maybe it would entitle you to benefits from the Democrat party. In this case, certainly it would entitle him to benefits from the Blackfeet tribe. So it says it has to be something that's given only to Indians. Does that mean to people who are a member of an enrolled tribe or what does Indians mean in that context? I don't know what it means in that context, Your Honor. I would argue that since Indians is used in the context of this case, that it would be consistent with sort of a circular loop or proving Indian inside of the definition of Indian. I mean, that's the problem is that first we say Indian means you have to have some Indian blood and then you have to have these other things. These other things depend on whether you are an Indian. And then however you answer it, you can become an Indian for purposes of the federal law or not. And certainly enrollment as an Indian is not required and this court's made that clear. Correct. We know that. So on Indian health service, the testimony is that he received benefits and that they're available to descendants. That's correct. Anything else? Not on that factor. On the next factor, enjoyment to the benefits of tribal affiliation. In this case, the record shows that he was prosecuted at least twice. That's an enjoyment? Well, it's an enjoyment if it means he wouldn't be prosecuted by the state. If he was able to be subject to tribal jurisdiction. Is there any bar? You can be prosecuted in tribal court and be prosecuted for the same offense in state court, can't you? Not if you're an Indian person. Is this a... In fact, under... Within the boundaries of the reservation. Yeah, under the Supreme Court case, of course, you have two different sovereigns there. And you can be tried for things arising out of the same conduct. That is correct. You have two different sovereigns. That is correct. That is correct. But if you're determined to be an Indian person and the crime is committed within the confines of the reservation... He doesn't want to be an Indian person, so he's not so determined here. I mean... Well, he wasn't determined in this case. He didn't ask to be prosecuted in tribal court, in other words. The fact is he apparently didn't have counsel to challenge it one way or the other. So where does that leave you, that he's had some prosecutions in tribal court? He has. He's had at least two. Right. And was any evidence introduced as to conviction or resolution of those prosecutions? They were not. The question in Cruz, this causes the question in Cruz to arise. In Cruz, the court was concerned about a single prosecution. And from my reading of Cruz, it seemed to me that they were concerned that this individual may have been subject to jurisdiction when he should not have been. He may have been charged. He may have been dismissed on the grounds that he wasn't an Indian person. I think this case is different. And the reason I think the proof is stronger in this case is in this case we have the testimony of a tribal prosecutor who says that a descendant of an enrolled member is subject to tribal court jurisdiction. Okay, but that's an assertion by the tribal court that apparently has never been tested anyplace else, has it? Not in this case, it was not. So the tribal court recognized that he was not a member of the tribe, not eligible for enrollment, but believed that they had rights to try him because he was a descendant. So they did recognize, in fact, that he only had descendant status. That's correct. That's correct. And the tribal prosecutor testified that that was sufficient for Blackfeet jurisdiction. And certainly I would think the jury should be allowed to rely on the testimony of a Blackfeet tribal prosecutor who is in Blackfeet tribal court every day in understanding what the definition or understanding the definition of jurisdiction of the tribal court. In this case also we know at least there were two prosecutions. In Cruz there was only one. And, again, that just goes to the quantity or the degree of contact with the tribal court, just like in Bruce where there was a long history of arrests. Here we have at least two prosecutions. Not only is that double the contact with the court at least, but it also would suggest that there's a greater indicia of reliability that he was subject to tribal court jurisdiction, meaning if he had been dismissed once, you'd think that the tribal prosecutors would have been more careful in prosecuting him a second time. Certainly a greater indicia of reliability than if there was just a lone prosecution. When you put that together with the testimony of the tribal prosecutor and the unquestioned statements in the record that he is a descendant member of the Blackfeet tribe, then the tribal court did exercise jurisdiction over him properly and the jury should have been allowed to rely on that. Is there a Montana state prosecution alternative for these offenses? I'm not saying for these individuals, but for assault with ADW, assault with a dangerous weapon, aggravated sexual abuse of a minor, are there Montana state statutes which could have been applied? Not if the crime occurs within the confines of the reservation and involves an Indian person. No state of Montana jurisdiction over such offenses? That's correct. In this reservation, that's correct. Now, Judge Brada, we have a public law 280 reservation where the answer would be different. But in this reservation, that's correct. Are they all 280 in Montana? Just one. Blackfeet? No. Public law 280 is where they've ceded the jurisdiction to the state. That would be the Flathead Reservation. The other six are all under federal jurisdiction. So he could have been charged under the non-Indian statute federally? Could have been charged under 1152. That's correct. But he wasn't? That's correct. When we're talking about Mr. Magi? With Mr. Magi. That's correct. So then we have this somewhat, I don't know what to call it, good but sort of almost hearsay testimony about, well, he goes to sweats and smudging events. And then it's established, it seems, that this witness has never actually seen that. So where does that testimony lead? Your Honor, in that case, I'd argue that you defer to the decision of the jury. There was enough there for the jury to make that finding. And as this Court has said in U.S. v. Stewart, we have to respect the province of the jury to resolve any evidentiary conflicts. And in this case, we've got a clear statement by Mrs. Hoyt at Supplemental Excerpts of Record pages 63 to 64, where she says unequivocally that Magi held himself out to be an Indian person. He went to powwows and he participated in sweats and smudging. We need to assume that the jury construed that against the defendant and included that in its finding. Moving over, I wanted to address Mann in the time I have left. Mann raises the interesting question that was dealt with in LaPierre, and that is, is there a threshold inquiry whether somebody is an enrolled tribal member of a recognized tribe? If they're not, then the inquiry ends. I think LaPierre has to be read in terms of Bruce and Cruz, especially since in Bruce it was made very clear that tribal enrollment is not the only way to prove Indian status. So to the extent that's... Tribal enrollment is not the problem here. The problem is you haven't got a tribe. You don't have Indian blood of a recognized tribe. I'm having some trouble. I see what Bruce says, but it didn't answer the question. It seemed that LaPierre, which coincidentally is the exact same non-recognized band as the one we have here, how would we as a three-judge panel be able to do anything different than what LaPierre did? If you look at footnote five in LaPierre, the court stated that LaPierre had abandoned his claim that he had raised below that he was affiliated to two federally recognized tribes. So the only thing that they had in front of it was whether he was affiliated to the Little Shell. That is not the case here. In this case, the government has argued that he is affiliated to the Blackfeet tribe, which is a federally recognized tribe. I noted that. I know you've argued that. Where's the evidence of that? In the record? It says he's one 1164th Chippewa band, 1064th, excuse me, and 1164th other. His blood quantum isn't connected to the Blackfeet tribe, but his political affiliation is to the Blackfeet tribe. The first part of the Bruce test deals with the blood quantum. The second part deals with the political recognition. In this case, he does have political recognition, if we go through the four factors, to the Blackfeet tribe. So wait a minute. We're now going to disconnect the blood quantum from the cultural affiliation? That's correct. As far as the tribe is concerned. You have to have Indian blood on the first factor. That's correct. You're saying it doesn't matter if it's blood from a recognized tribe. That's correct. Well, in this case, in this case, well, no, no, no. Let's start with, okay, number one is sub-factor A. Some Indian blood. Does the word Indian in that factor require that your blood be from a federally recognized tribe? I would answer that no. When we look at the Bruce test, the question is whether or not the person's ancestor existed on these shores prior to the arrival of Christopher Columbus. And so if we can demonstrate that that's the case, then I think that's what the first part of the Bruce test is concerned about. I'm reading from the end of LaPierre. Thus, in LaPierre, is the same as man for all Indian-related purposes? He was a member of the Little Shell tribe. That's correct. Thus while, I'm reading from Judge Fletcher's decision, thus while LaPierre may be an Indian in an anthropological or ethno-historical, I haven't heard that word before, since he is not an Indian for purposes of criminal jurisdiction. I would read that to mean he meets the first test of Cruz, but they're considering that he fails the second test. Okay. In the time I have left, I think LaPierre, that's the key point, whether LaPierre is distinguishable. LaPierre is distinguishable because in that case, LaPierre did not assert his affiliation to the Blackfeet tribe as he had done below. When he got to this court, he waived it. He abandoned that claim, and so all the court had to consider was his affiliation with the Little Shell. In this case, again, we've argued he has affiliation to the Blackfeet tribe, and when we go through the four factors of the second part of the Bruce test, we think that that can be established. You look at the first factor. Again, it's undisputed he's not an enrolled member of the Blackfeet tribe. He's not a descended member. But we go to the second most important factor, and that's government recognition of receipt of assistance reserved only to Indians. In this case, there's enough evidence for the jury to have found that he did receive free emergency care and also received urgent care. Now, Mr. He received assistance, but what in the record shows that that assistance is only available to Indians? The testimony in the record was that free emergency care is only available to Indians and urgent care is only available to Indians. A non-Indian is not entitled to either of those two things, and that's what he received. And that judgment would have been made by whom? By whoever was admitting him at the time? That's correct, and in this case, there was testimony showing that he was a descended member of a federally recognized tribe, just not this one. He was a descended member, I believe, of the Chippewa Cree and the Rocky Boys Reservation. So he's like Russell Means? Don't know the reference. Well, there's a case involving whether the Navajo Nation could have exerted their tribal jurisdiction over Means, who was not a member of the Navajo, but living on the Navajo. He was an enrolled member of another tribe. That's right. When we go on, then, to take a look at the third factor, benefits of tribal affiliation, he participated in hunting events on the reservation. And here I want to be sure I make the point that there is nothing in the record that contradicts that he did this. Now, counsel has supplemented the record in his brief by attaching a reference to the Blackfeet Tribal Code. Your Honor, I would ask that this panel ignore that reference. It is outside the record, and it wasn't introduced to the jury at trial. This is a sufficiency of the evidence review, so we're interested in hearing what the jury heard, not what additional evidence can be brought in on appeal. This may be a repeat, and if it is, I apologize. The first test under Bruce is the determination of degree of Indian blood. That's correct. Are there any cases that give us guidance on what Indian blood means in that circumstance? Does it mean blood of a recognized tribe or people who were here before Columbus? I am unaware of any gloss to apply to that term in this case. That wasn't an issue. Do we need to decide that in this case? No, that's not an issue that's been raised. Fifteen seconds. Thank you. When we take a look at all of the factors together, this evidence was all submitted to the jury, and in Mann 1152 and 1153, they got all the evidence in front of them. They had a chance to consider it, to review it, to make their own determination, and they decided that there was sufficient evidence, and we ask that you defer to that finding of the jury. Thank you. Rebuttal? You have about four minutes left. Are you guys going to divide that? Yes. Why don't we put three minutes on for each? Your Honor, very briefly, with respect to the last comment made by counsel regarding the Blackfeet Tribal Code, the code is the code. It's the tribal law. It's not evidence. I think that the court can take judicial notice of what the tribal code says with respect to hunting, and that's set forth in the brief. Secondly, there is absolutely no evidence whatsoever of Blackfeet Tribal affiliation. I can point to the counsel argues first that he received emergency services. I asked this witness whether somebody like me would be able to receive emergency services, and he says, yeah, you'd be able to receive emergency services, but we'd send you a bill. We'd send you a bill. And so I'd point the court to page 120 of the transcript where this same witness is on the stand, and they're talking about this exhibit. And I'll begin at line eight. I'm asking, at the lower right-hand, there's a number, $64,000. What does that mean? That's his total hospital bill, total amount. And that, this witness continues, was denied him. That is, they wouldn't pay for it because of his ineligibility. He was ineligible to receive that. And if we look at page 121 of the record, I ask, in other words, the bottom line is that he was denied $64,000 approximately for emergency services. Is that right? Yes. Did the hospital submit a bill to him, or did they end up writing it off? What happened? You know, I don't know the answer to that question. I don't know whether that just was never developed in the record, and I don't know what happened after that. But I do know that the Indian Health Service refused to pay for it. Now, some of the questions that I've heard the court ask is, for example, is there a hole in the law? And as I was sitting there, I looked at Bruce again, and there was one area or aspect of the law where it would not create a hole, and that is where Congress acts. Congress can easily say states have jurisdiction over non-recognized tribes. And I think if we read Lapeer and the holding of Lapeer, they affirm state court jurisdiction in that case. They say the federal court does not have jurisdiction. State courts do. The habeas matter was correctly decided. His conviction at the state level lies. So I don't think that there's a hole in the law. Finally, as to count two and whether the courts – I don't know whether you're thinking about remanding it for further consideration by the district court, but I'd point out to the court that I move for judgment of acquittal as to count two as well at the end of our case, arguing that all of the state's evidence and all of the evidence here was that Mr. Mann is, in fact, an Indian person. And I think that if collateral estoppel applies at all, it's against the government. They asserted and proved that he's –  No. It's part and parcel of the double jeopardy issue. You need to wind up. Okay. That's all. Thank you. Thank you. Mr. Donovan, three minutes. I'd like to focus on two issues. First, the fourth so-called non-blood factor, social recognition as an Indian through residence on a reservation and participation in Indian social life. There's no evidence here even that my client lived on the reservation, no evidence that he grew up on the reservation, no evidence that he went to school or anything else. They're just completely lacking on that. And secondly, the only evidence of participation in Indian social life is him saying that he participated in sweats and powwows. And this is outside the record, but I do know that non-Indians participating are welcome to participate in sweats and powwows. So there's really a lack of evidence on participation in Indian social life. The last thing I'd like to mention, an argument, a waiver has been raised. It's my understanding that when trial counsel makes a Rule 29 motion during the trial, there's no requirement to be specific about what the argument is. And secondly, the argument of sufficient degree of blood came out of the Cruz case, which followed the Bruce case, and I don't think anything really was waived. That argument really wasn't there at the time the opening brief was filed. And that's all I have I would submit. Thank you. Okay. Thank everyone for their argument. The case just argued will be submitted for decision.
judges: Hawkins, McKeown, Bybee